**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert H. SCHMIDT and Lawrence B. Schmidt, Defendants–Appellants.**

No. 93–3327.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1994.

Decided Feb. 1, 1995.

Gerard A. Brost, Office of U.S. Atty., Peoria, IL (argued), for U.S.

Walter Jones, Jr., Brian Witus (argued), Pugh, Jones & Johnson, Chicago, IL, Frederick P. Kopp, Lousberg, Kopp, Kutsunis & Weng, Rock Island, IL, for Robert H. Schmidt and Lawrence B. Schmidt.

Before POSNER, Chief Judge, and COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

The defendants, Robert H. Schmidt and Lawrence B. Schmidt, were charged in a four-count information with violations of the Clean Water Act.[1] *See* 33 U.S.C. §§ 1317(d), 1319(c) and 1319(c)(4). The defendants were also charged with intentional storage of hazardous wastes without a permit in violation of 42 U.S.C. § 6928(d)(2). Thereafter, on March 5, 1993, the defendants, represented by counsel, pled guilty to the charges in the information (Robert pled guilty to Counts I, II, and III while Lawrence pled guilty to Counts III and IV). Included in each of the defendants' guilty pleas was the following clause:

> The defendant recognizes that the court is not bound by any estimate of the probable sentencing guideline that the defendant may have received from his attorney, the government or the probation office. Realizing the uncertainty in estimating what sentence he will ultimately receive, *the defendant knowingly waives his right to appeal the sentence imposed by the district court in exchange for the concessions*

---

1. The defendants filed waivers of their right to be charged in an indictment.

made by the government in this agreement.[2]

*Record* at 16–10 (plea agreements of Robert H. Schmidt and Lawrence B. Schmidt signed and approved by each of them on March 5, 1993) (emphasis added). At the sentencing hearing held on September 10, 1993, the district court sentenced Robert to thirty months imprisonment, imposed a fine of $50,000, and ordered a period of supervised release for two years. The court also sentenced Lawrence to twenty-four months imprisonment, imposed a fine of $25,000, and ordered supervised release for two years. On appeal, the defendants are challenging the district court's application of the United States Sentencing Guidelines.

█ As a preliminary matter, we must address the question of the defendants' waivers of their right to appeal. Although the government has not relied on the defendants' waivers, we are not precluded from affirming on that basis. *See, e.g., United States v. Giovannetti*, 928 F.2d 225, 227 (7th Cir.1991) (*per curiam*) (appellate court has the discretion to overlook the government's failure to argue harmless error). In deciding whether to determine the merits of the Schmidts' arguments or overlook the government's failure to argue waiver, one controlling consideration is whether the waivers were "certain or debatable." *Id.* Accordingly, we have focused our attention on the circumstances surrounding the Schmidts' execution of their plea agreements, each of which contained the waiver of the right to appeal.

Several of our sister circuits have held that a waiver of a right to appeal contained within a guilty plea is enforceable. *See United States v. Bushert*, 997 F.2d 1343, 1347–50 (11th Cir.1993); *United States v. Melancon*, 972 F.2d 566, 567–68 (5th Cir.1992); *United States v. Rivera*, 971 F.2d 876, 896 (2d Cir. 1992); *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir.1992); *United States v. Navaro–Botello*, 912 F.2d 318, 321–22 (9th Cir.1990),

cert. denied, 503 U.S. 942, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992); *United States v. Wiggins*, 905 F.2d 51, 52–54 (4th Cir.1990); *see also United States v. Hendrickson*, 22 F.3d 170, 174 (7th Cir.1994) (finding no waiver of the right to appeal because such a waiver "must be express and unambiguous"); *Johnson v. United States*, 838 F.2d 201, 203–04 (7th Cir.1988) (upholding waiver of right to appeal not contained in the plea agreement but in a separate pleading). These courts reasoned that it is well settled that a defendant may waive constitutional rights as part of a plea bargaining agreement. *Newton v. Rumery*, 480 U.S. 386, 393, 107 S.Ct. 1187, 1192, 94 L.Ed.2d 405 (1987). Although the right to appeal is statutory and not constitutional, *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977), the courts have upheld waiver of the statutory right to appeal. *E.g., Melancon*, 972 F.2d at 567–68.

█ The courts have, however, placed restrictions on the waiver of the right to appeal. Obviously a waiver will be upheld only if the record clearly demonstrates that the defendant knowingly and voluntarily entered into the plea agreement. *Id.* Additionally, despite a valid waiver of the right to appeal, a defendant could appeal his sentence if the trial court relied on a constitutionally impermissible factor such as race or if the court sentenced the defendant above the statutory maximum. *United States v. Marin*, 961 F.2d 493, 496 (4th Cir.1992) ("a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court. For example, a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race.").

█ In addition to the clear waiver of the right to appeal in the defendants' respective

---

**2.** The language of the waiver is nearly identical to the waiver affirmed by the Fourth Circuit in *United States v. Wiggins*, 905 F.2d 51, 52–54 (4th Cir.1990), which stated

[k]nowing these facts, defendant ... expressly waives the right to appeal his sentence on any ground, including any appeal right conferred

by 18 U.S.C. § 3742.... *Realizing the uncertainty in estimating what sentence he will ultimately receive, the defendant knowingly waives his right to appeal the sentence ... in exchange for the concessions made by the government in this agreement.*

*Id.* at 53 (emphasis added).

guilty pleas, this court has examined the transcript of the defendants' March 5, 1993 guilty plea hearing, including the district judge's advice to the respective defendants that their respective plea agreements contained a waiver of the right to appeal:

THE COURT: The agreements further provide that . . . realizing the uncertainty in estimating the sentence that you will ultimately receive, *each of you in the agreement knowingly waives your right to appeal the sentence imposed by this Court in exchange for concessions made by the government in this agreement.*

*So, in other words, you're giving up an important right here, the right to appeal the sentence if, for example, you feel it's too severe for some reason. Do you understand that?*

ROBERT SCHMIDT: Yes, sir.

LAWRENCE SCHMIDT: Yes.

*Guilty Plea Transcript* at 26–27 (emphasis added). Later in the hearing, the court again asked the defendants if they understood that they were foregoing their right to appeal:

THE COURT: The Sentencing Reform Act has resulted in certain sentencing guidelines for judges to follow in determining the sentence in a criminal case. Have each of you and your attorneys talked about how the Sentencing Commission guidelines might apply to your case?

ROBERT SCHMIDT: Yes.

LAWRENCE SCHMIDT: Yes.

THE COURT: Do you understand that the Court will not be able to determine the guidelines sentenced [sic] for your case until after the presentence report has been completed and you and the government have had an opportunity to challenge the facts reported by the probation officer?

ROBERT SCHMIDT: Yes.

LAWRENCE SCHMIDT: Yes.

THE COURT: Do each of you understand that after it has been determined what guideline applies to the case, the Court has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines?

ROBERT SCHMIDT: Yes.

LAWRENCE SCHMIDT: Yes.

THE COURT: *Do each of you understand that—I remind you that each of you has given up your right to appeal in this case. Do you understand that?*

ROBERT SCHMIDT: Yes.

LAWRENCE SCHMIDT: Yes.

*Guilty Plea Transcript* at 34–35 (emphasis added).

These two excerpts from the guilty plea hearing clearly reveal that the waiver of the right to appeal was knowingly, voluntarily, and intelligently made. Moreover, the court also inquired of the defendants as to the voluntariness of their guilty pleas:

THE COURT: Has anyone made any other or different promise or assurance to you of any kind in an effort to induce you to enter a plea of guilty in this case?

ROBERT SCHMIDT: No sir.

LAWRENCE SCHMIDT: No.

THE COURT: Has anyone attempted in any way to force you to plead guilty in this case?

ROBERT SCHMIDT: No.

LAWRENCE SCHMIDT: No.

*Guilty Plea Transcript* at 31. The guilty plea hearing could not be more clear in reflecting that it was conducted in full accordance with Fed.R.Crim.P. 11, and reveals that each of the defendants knowingly and voluntarily waived his right to appeal his respective sentence. Moreover, the sentences did not exceed the statutory maximum nor is there any evidence that the court relied on a constitutionally impermissible factor such as race. *See Marin,* 961 F.2d at 496. In addition, we note that the defendants were both educated (Robert had a bachelor's degree from Augustana College while Lawrence had graduated from high school), together they owned and operated a successful business, they were represented by very able counsel, and they signed their respective guilty pleas. *See Chichakly v. United States,* 926 F.2d 624, 631 n. 12 (7th Cir.1991). Thus, their education, experience in the business world, and representation by highly qualified counsel makes it all the more

evident that their respective waivers of their individual right to appeal were knowingly and voluntarily given.

 The Schmidts' waivers of the right to appeal were clear and unequivocal. Although this court has jurisdiction to determine the merits of the defendants' appeal, we decline to exercise it.[3] Because we are convinced that each of the defendants, Robert Schmidt and Lawrence Schmidt, waived his right to appeal knowingly, voluntarily, and intelligently, we refuse to entertain their respective appeals. The defendants' appeals are DISMISSED.

RIPPLE, Circuit Judge, dissenting.

The right to appeal a sentence is a statutory right. *See* 18 U.S.C. § 3742(a). As the majority notes, the circuits that have confronted the issue have held that a defendant can, as part of a plea agreement, agree that he will not later exercise the statutory right to appeal with respect to the sentence to be imposed by the district court under the guidelines. Appellate courts have usually confronted this situation when a defendant has attempted to appeal his sentence despite having entered into such an agreement. In that context, the government has raised the existence of the agreement in reply to the defendant's appellate arguments. The court then has proceeded to determine whether the waiver contained in the plea agreement was knowing and voluntary.[1] If the court determined that those criteria were met, it considered the sentencing issues to have been removed from the appeal and the appeal was dismissed for want of jurisdiction. There was nothing to adjudicate.[2]

In this case, we are confronted with an atypical situation. Although it obtained waivers of appellate rights with respect to sentencing from the defendants, the government does not rely upon these waivers on appeal. Instead, it addresses, in great detail, the merits of the defendants' arguments with respect to the sentence. The majority deals with this situation simply by declaring that,

---

**3.** Even if we were to reach the merits of the Schmidts' appeal, we would affirm the sentences imposed. First, the district court's enhancement of the Schmidts' sentences under U.S.S.G. § 3C1.1 for willful obstruction of justice was proper, despite the fact that the defendants' actions—removing water sampling probes from plating lines—occurred before they knew they were under investigation. *See United States v. Polland,* 994 F.2d 1262, 1269 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1115, 127 L.Ed.2d 425 (1994) (section 3C1.1 enhancement applies "to a defendant who obstructed or attempted to obstruct justice even if the obstruction occurred before the police or prosecutors began investigating or prosecuting the specific acts of the defendant"). Second, the district court did not engage in impermissible "double counting" when it imposed a four-level enhancement under U.S.S.G. § 2Q1.2(b)(4) for their permit violation. The district court assigned the defendants a base offense level of 8 for their substantive violation under U.S.S.G. § 2Q1.2—operating a wastewater treatment facility in violation of the standards of the Clean Water Act. The court then enhanced the defendants' base offense level by four, to reflect the specific offense characteristic of storage without a permit as provided by § 2Q1.2(b)(4). We see no error to this calculation. Finally, we would affirm the district court's grouping of the environmental counts under U.S.S.G. § 3D1.3(a) and computation of enhancements, because we agree with the government that the enhancement for the defendants' ongoing, continuous and repetitive discharge and the enhancement for a permit viola-

tion would apply to either one of the environmental counts.

**1.** At least one circuit has been particularly careful to delineate the burden of the government to demonstrate that the waiver is a knowing and intelligent one. In *United States v. Bushert,* 997 F.2d 1343 (11th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 652, 130 L.Ed.2d 556 (1994), the Eleventh Circuit, while accepting the principle that a defendant could waive the right to appeal a sentence, specifically noted that such a waiver was dependent on the government's establishing to the satisfaction of the appellate court that the district court had questioned explicitly the defendant during the Rule 11 colloquy about the waiver of appellate rights or that the record otherwise makes it "manifestly clear" that the defendant understood the full significance of his rights. 997 F.2d at 1351.

**2.** For example, in *United States v. Wiggins,* 905 F.2d 51 (4th Cir.1990), the defendant appealed the failure of the district court to grant him a downward departure for acceptance of responsibility. The government claimed that he had waived his right to appeal this issue. Upon examination of the record, the court of appeals determined that the defendant had waived, knowingly and intelligently, his right to appeal sentencing issues. Because the waiver was therefore valid, the sentencing issues were not before the court and the appeal was dismissed for want of jurisdiction. There was nothing for the court to decide.

despite the government's decision not to assert the waivers, we ought to notice them sua sponte and decline to reach the merits.

There is certainly no authority for the proposition that we must accept the waivers of appellate rights despite the government's lack of reliance upon them.[3] Rather, we must determine whether sound principles of appellate decision-making make it prudent that we rely on the waivers. In my view, several considerations counsel against such a course. At the outset, we must remember that it is not our usual practice to ignore the government's waiver of an appellant's waiver. Although it has been argued in dissent, without citation of authority, that we can ignore the government's failure to rely upon a waiver,[4] our usual practice in direct criminal appeals is to refuse to ignore the government's failure to rely on a waiver.[5] Therefore, unless there is an important reason for us to deviate from our usual course, we ought to maintain an even-handed approach to the adjudication of cases and, as we have on countless occasions before, hold that the government has waived its right to rely on the waivers and proceed to decide the case on the merits.

No such reason for deviating from our usual course of proceeding is present here.[6] It certainly cannot be said that deciding this case on the merits would impose an unreasonable burden on the court.[7] Both parties

**3.** *Cf. United States v. Sarsoun*, 834 F.2d 1358, 1361 n. 5 (7th Cir.1987) (holding that the court of appeals need not accept a waiver of appellate rights unsupported by consideration).

**4.** *See United States v. Leichtnam*, 948 F.2d 370, 383 (7th Cir.1991) (Coffey, J., dissenting) (writing that "it is within our discretion to consider such arguments when to do so is in the interests of justice").

**5.** *See, e.g., United States v. Baker*, 40 F.3d 154, 160 (7th Cir.1994) (government waived defendant's waiver of sufficiency of evidence challenge); *United States v. Anaya*, 32 F.3d 308, 312 (7th Cir.1994) (government waived defendant's waiver of evidentiary objection); *United States v. Hollingsworth*, 27 F.3d 1196, 1203 (7th Cir.1994) (en banc) (government "bailed out" defendant who arguably waived entrapment defense); *United States v. Stone*, 987 F.2d 469, 471 (7th Cir. 1993) (government waived defendant's waiver of instructional challenge); *United States v. Donaldson*, 978 F.2d 381, 388 (7th Cir.1992) (government waived defendant's waiver of various Fourth Amendment claims); *United States v. Leichtnam*, 948 F.2d 370, 375 (7th Cir.1991) (government waived defendant's own waiver of challenges to evidence and jury instruction); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (per curiam) (government waived right to argue waiver by addressing the merits before the Supreme Court prior to remand); *United States v. Malin*, 908 F.2d 163, 167 (7th Cir.) (government waived waiver of objections to evidence and jury instruction), *cert. denied*, 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990); *United States v. Moya–Gomez*, 860 F.2d 706, 745–46 n. 33 (7th Cir.1988) (government waived defendant's waiver of sufficiency of evidence challenge), *cert. denied*, 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *cf. United States v. Caputo*, 978 F.2d 972, 975 (7th Cir.1992) ("There are other grounds besides plain error on which courts forgive waivers in criminal as in other cases. One is where the appellee has waived waiver.").

**6.** We have held that an appeal that is frivolous may be dismissed even if the appellee does not invite our attention to the matter because further consideration would be a waste of judicial resources. *Frederick v. Marquette Nat'l Bank*, 911 F.2d 1, 2 (7th Cir.1990). The majority does not rely on this principle here, and I agree that it is not applicable. While this exception is undoubtedly a salutary one when it is appropriately used, our cases make it clear that it ought to be invoked with great circumspection. *See Crowley Cutlery Co. v. United States*, 849 F.2d 273, 278 (7th Cir.1988) (noting that this exception ought to be applied only when the pleadings and other relevant materials setting forth the claim are read against the relevant statutory and decisional background); *see also Hardy v. City Optical Inc.*, 39 F.3d 765, 767 (7th Cir.1994) (noting the principle in dictum); *Beauchamp v. Sullivan*, 21 F.3d 789, 790 (7th Cir.1994) (holding that appellant lacked standing and that claim was frivolous in light of recent Supreme Court holding). By contrast, here, the government's non-reliance on the benefit of a bargain that it once struck with the defendant is a decision best left to the Executive branch which, for many reasons unknown to us, might determine that it is preferable to submit the issues that arise at sentencing to the judgment of the court.

**7.** In *United States v. Giovannetti*, 928 F.2d 225 (7th Cir.1991) (per curiam), we decided that we were under no obligation to engage in harmless error analysis when that aspect of the case had not been briefed by the government. We noted that, without the parties' assistance, we would be required to scour the record in search of errors that, in light of the entire record, we believed to be prejudicial. *Id.* at 226; *see also United States v. Benson*, 941 F.2d 598, 605 (7th Cir.1991) (declining to undertake definitive harmless error

have thoroughly briefed the issues and the case is ready for decision on the merits. All we need to do is decide the case—the same expenditure of resources necessary in every case that comes before us. Indeed, in dicta, the court expresses its view of the merits. Nor would our reaching the merits deprive the government of any statutory right; it would not skew the fairness of the proceedings against the government. Indeed, there is a good reason to respect the government's waiver. The defendants' waivers were the product of a plea agreement. These waivers of appellate rights, in derogation of the usual course of adjudicating a criminal case, were for the sole benefit of the government and are based solely on a contractual right, a contractual right that the government does not choose to exercise. The reasons for that decision are best left to the Executive branch. In the exercise of its own high responsibilities for the administration of justice, that branch might well decide, for reasons that it chooses not to divulge to the court, that considerations of justice require that the government no longer invoke a bargain that it once thought was compatible with those responsibilities, but which now would frustrate the execution of those same obligations. It is not our task to insist on a bargain that the government, the only party which might benefit from it, does not want to enforce. We ought to decide the case on the merits.

analysis on "unguided search of the lengthy trial record"); *United States v. Kerley,* 838 F.2d 932, 942 (7th Cir.1988) (declining to engage in harmless error analysis when government failed to argue it). *Compare United States v. Parmelee,* 42 F.3d 387, 392 n. 6 (7th Cir.1994) (undertaking harmless error analysis "given the certainty of harmlessness"); *United States v. Jewel,* 947 F.2d 224, 229 n. 5 (7th Cir.1991) (same); *United States v. Davenport,* 929 F.2d 1169, 1175 (7th Cir.1991) (same), *cert. denied,* 502 U.S. 1031, 112 S.Ct. 871, 116 L.Ed.2d 776 (1992).